IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES F. SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 22-cv-120-DES |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff James F. Sims ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). This process requires the Commissioner to consider:

(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

**II.     Claimant's Background and Procedural History**

On January 15, 2020, Claimant applied for disability insurance benefits under Title II of the Act. (R. 18, 184-91). Claimant alleges he has been unable to work since May 23, 2019, due to left knee surgery, high blood pressure, and colitis. (R. 18, 211). Claimant was 58 years old on the date of the ALJ's decision. (R. 26, 39). He has a high school equivalent education and past work as an appliance assembler, machine feeder, and wire puller. (R. 40, 62).

Claimant's claim for benefits was denied initially and on reconsideration, and he requested a hearing. (R. 66-91, 110-11). ALJ Edward M. Starr conducted an administrative hearing and issued a decision on July 21, 2021, finding Claimant not disabled from the alleged onset date of May 23, 2019, though the date of his decision. (R. 18-26, 36-64). Upon review, the Appeals Council reversed the ALJ's decision and issued a partially favorable decision on March 11, 2022, finding Claimant disabled for a closed period of May 23, 2019, through July 15, 2020. (R. 8-14). The Appeals Council's March 2022 decision is the Commissioner's final decision. 20 C.F.R. § 404.981. Claimant filed this appeal on April 18, 2022. (Docket No. 2).

**III.    The Decisions of the ALJ and the Appeals Council**

In his decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since the alleged onset date of May 23, 2019. (R. 20). At step two, the ALJ found Claimant had severe impairments of hypertension and major joint dysfunction of the knees. *Id.* At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 20-21).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) with frequent climbing, balancing, crawling,

3

kneeling, stooping, and crouching. (R. 21). The ALJ provided a summary of the evidence that went into this finding. (R. 21-25).

Based on the testimony of a vocational expert ("VE"), the ALJ concluded at step four that Claimant could return to his past relevant work as an appliance assembler as actually and generally performed, and as a machine feeder as generally performed. (R. 24-25). Accordingly, the ALJ concluded Claimant was not disabled. (R. 26).

On review, the Appeals Council issued a decision that was partially favorable to Claimant, finding he became disabled on May 23, 2019, but that his disability terminated on July 16, 2020. (R. 8-14). For the period prior to July 16, 2020, the Appeals Council found Claimant retained the RFC to perform a range of light work. (R. 9). The Appeals Council then applied Rule 202.06 of the Medical-Vocational Rules (the "grids") to find Claimant disabled from May 23, 2019, through July 15, 2020.[1] *Id.* Beginning July 16, 2020, however, the Appeals Council found Claimant's condition had medically improved. *Id.* The Appeals Council therefore adopted the ALJ's determination that Claimant retained the RFC for a limited range of medium work beginning July 16, 2020. *Id.* The Appeals Council also adopted the ALJ's conclusion that Claimant could return to his past relevant work as an appliance assembler both as generally and actually performed, and the job of machine feeder as generally performed. *Id.* The Appeals Council thus found Claimant not disabled beginning July 16, 2020.

---

[1] According to the grids, Table 2 applies to a claimant with an RFC that allows limited light work. 20 C.F.R. § pt. 404, subpt. P, app. 2, table no. 2. Under Rule 202.06, a person of advanced age (defined as age 55 or older pursuant to 20 C.F.R. § 404.1563(e)), who is a high school graduate or more, where that educational level does not provide for direct entry into skilled work, and has skilled or semi-skilled skills that are not transferrable is categorized as "disabled." 20 C.F.R. § pt. 404, subpt. P, app. 2, table no. 2, § 202.06.

**IV.   Issue Presented**

Claimant contends that the Appeals Council's decision that Claimant retained the RFC to return to a range of medium work beginning July 16, 2020, is based on "speculation" rather than substantial evidence.[2] (Docket No. 15 at 4). The Court does not agree.

**V.   Analysis – Appeals Council's RFC for Medium Work Beginning July 16, 2020, is Supported by Substantial Evidence**

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week, despite his medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). As part of the RFC assessment, the Commissioner "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. Stated differently, the Commissioner must explain the basis for the limitations included in the RFC, with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the Commissioner must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* Furthermore, if the RFC conflicts with a medical source opinion, the Commissioner must "explain why the opinion was not adopted." *Id.*

The relevant medical evidence reveals that Plaintiff presented to the emergency department at Baptist Health-Fort Smith Hospital on May 22, 2019, with severe pain in his right knee following a motor vehicle accident. (R. 291-307). An x-ray of Claimant's right knee taken that day revealed

---

[2] As part of his argument that the Appeals Council erred in concluding Claimant could perform medium work, Claimant asserts generally that the Commissioner "is required to consider all of Claimant's medically determinable impairments, singly and in combination," and may not ignore significantly probative evidence "that does not support his decision." (Docket No. 15 at 3). Claimant does not develop these arguments by specifying an impairment the ALJ failed to consider and or by pointing to evidence the ALJ overlooked, and any such arguments are waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

a comminuted, displaced right patellar fracture. (R. 294-95). Approximately one week later, Dr. John Harp performed an open reduction and internal fixation on Claimant's right patella. (R. 330, 368-69). Claimant established care with Dr. Timothy Garlow on October 8, 2019, for follow-up care for his knee. (R. 394). Claimant reported that he was improving, but still experienced right knee pain. *Id.* X-rays taken that day revealed a "well reduced inferior pole patella fracture that seems to be well on its way to healing." *Id.* Dr. Garlow recommended home exercises and a low-dose anti-inflammatory. *Id.* At a follow-up appointment on November 19, 2019, Claimant reported doing "much better," stating his knee was not "giving out" like it had been, but he still had some pain. (R. 393). On physical examination, Dr. Garlow noted Claimant had "some what seems like pain out of proportion just with light touch around the knee." *Id.* He found full range of motion in Claimant's knee with good strength and full extension. *Id.* Dr. Garlow recommended a topical anti-inflammatory, and indicated he would see Claimant on an as-needed basis going forward. *Id.* Claimant followed-up again with Dr. Garlow on December 31, 2019. (R. 392). Dr. Garlow noted Claimant had full range of motion in his knee with pain along the medial joint line. *Id.* X-rays taken that day revealed a consolidated fracture line and some spurring along the inferior pole of the patella. *Id.* Dr. Garlow administered an injection to Claimant's knee. *Id.* At a follow-up appointment with Dr. Garlow on June 17, 2020, Claimant reported knee weakness and pain. (R. 442). On physical examination, Dr. Garlow found full range of motion in Claimant's knee, and a patella that "tracks nicely." *Id*. Dr. Garlow did not appreciate any crepitus or instability. *Id*. He did, however, find weakness in both of Claimant's extremities with knee extension, knee flexion, and hip flexion, noting the right was slightly weaker than the left. *Id*. X-rays taken that day revealed a completely consolidated inferior pole patellar fracture. *Id*. Dr. Garlow indicated he tried to get Claimant into therapy in the past, but he was "not very interested in this." *Id*.

Because Claimant did not have any insurance, he was also not interested any sort of neuro referral. *Id.* Dr. Garlow indicated the injections he administered in the past did not result in any improvement to Claimant's knee and he stated "I am not sure that there is much more I can offer him at this point. We will see him back as needed going forward." *Id.*

Claimant underwent two consultative examinations as part of his disability evaluation process. On July 16, 2020, Kelsey Haughton, PA-C, performed a consultative physical examination of Claimant. (R. 450-60). Apart from noting a "resting tremor" of Claimant's head, and "some limited range of motion" of his right knee and right little finger, Ms. Haughton's examination was normal. *Id.* Additionally, Dr. Gerald Rana performed a consultative examination of Claimant on November 30, 2020. (R. 496-507). On examination, Dr. Rana found full range of motion in Claimant's back, neck, hips, knees and ankles, but did note some "slight decreased" range of motion in Claimant's shoulders, minor pain with range of motion testing in his spine, and some crepitus in his right elbow. (R. 502-03). Dr. Rana noted a "resting tremor" of Claimant's head and weakness when walking on his heels and toes; however, Claimant's coordination was otherwise normal. (R. 501-502, 506).

On July 7, 2020, state agency physician Dr. William Spence reviewed the record and determined Claimant could perform the full range of medium work. (R. 70-72). State agency physician Dr. James Metcalf affirmed this finding on review. (R. 84-88).

Following the ALJ's July 2021 decision, Claimant submitted additional evidence to the Appeals Council. (R. 177). Included among this evidence were cervical spine x-rays taken August 16, 2021, which Dr. Garlow described as indicating "a lot of kyphosis in the [cervical] spine. C4, C5, C6, C7 all show a lot of endplate spurring. There is no listhesis. I do not appreciate any fractures, acute or remote." (R. 524). A CT scan of Claimant's cervical spine performed on

August 25, 2021, was also submitted to the Appeals Council. (R. 525-28). The CT scan revealed "mild to space [sic] narrowing at C4-5, C5-6 and C6/7 levels. Spondylitic ridging with anterior spurring at these levels. Some degenerative facet changes present. Some motion artifact present." (R. 527). Dr. Garlow described this CT scan as showing "a lot of endplate spurring. Fairly rigid alignment." (R. 522).

In light of this newly submitted evidence, the Appeals Council solicited an additional medical source opinion from Dr. Richard Polin, who reviewed all the evidence of record, including Claimant's newly submitted evidence. (R. 9, Docket No. 21 at 3-4). Noting Claimant's history of patellar fracture, tremor, and cervical spine disease, Dr. Polin opined that Claimant "was capable of light work with occasional stooping and bending and no climbing or crawling and no working at heights or with heavy machinery from 5/23/2019 until 5/22/2020." (Docket No. 21 at 3-4). As discussed above, the Appeals Council adopted Dr. Polin's opinion for the period before July 16, 2020, and applied the grids to find Claimant disabled for a closed period between May 23, 2019 and July 15, 2020.

Although the Appeals Council found Claimant more limited than the ALJ did prior to July 16, 2020, the Appeals Council adopted the ALJ's finding that Claimant could perform a range of medium work beginning July 16, 2020. (R. 9, 12). As support for this conclusion, the Appeals Council found Claimant's condition improved as of July 16, 2020, because there was a decrease in severity based on changes in signs, symptoms, and laboratory findings, as evidenced by Ms. Haughton's essentially normal consultative examination that day. (R. 10). In arriving at Claimant's RFC for a range of medium work, the ALJ discussed Claimant's hearing testimony and the findings of his treating, consultative, and reviewing physicians. (R. 21-25). As part of his discussion of the opinion evidence, the ALJ evaluated the state agency physicians' opinions that

Claimant could perform the full range of medium work and found them "largely persuasive," but nonetheless included additional postural limitations in the RFC to account for Claimant's "symptomatic complaints." (R. 24-25).

The Court finds no error in the ALJ's (and in turn, the Appeals Council's) RFC assessment for the period beginning July 16, 2020. As explained above, the ALJ's conclusions regarding the evidence are supported by substantial evidence. Claimant simply disagrees with the ALJ's interpretation of the evidence. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent and administrative agency's findings from being supported by substantial evidence." *Cowan v. Astrue,* 552 F.3d 1182, 1185 (10th Cir. 2008). Moreover, even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.*

The ALJ adequately explained the link between the evidence and the RFC and specifically discussed how he accounted for Claimant's subjectively reported symptoms. (R. 23, 25). Additionally, the ALJ fully considered the normal and abnormal range of motion and strength findings, Claimant's pain, and the relevant imaging of record and concluded that the RFC adequately accounted for the functional limitations resulting from Claimant's knee impairment. (R. 21-25). The Court thus finds the ALJ considered all the evidence related to Claimant's knee impairment and sufficiently explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("the ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Plaintiff's argument essentially asks the Court to reweigh the evidence and interpret it in his favor, which the Court cannot do. *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular

types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for that of the Commissioner's." (citations omitted).  The ALJ's decision reflects that he examined and analyzed Claimant's subjective symptoms, the objective medical evidence, and the opinion evidence of record.  It was only after evaluating the entire record and explaining his findings, that the ALJ formulated Claimant's RFC.  Accordingly, the ALJ and the Appeals Council applied the correct legal standards, and their RFC assessment is supported by substantial evidence.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this  21st   day of September, 2023.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE